906 A.2d 360

**James Allen RUFFIN**

v.

**STATE of Maryland.**

**No. 86, Sept. Term, 2005.**

Court of Appeals of Maryland.

Aug. 31, 2006.

Julia Doyle Bernhardt, Asst. Public Defender (Nancy S. Forester, Public Defender, Baltimore), on brief, for Petitioner.

Sarah Page Pritzlaff, Asst. Atty. General (J. Joseph Curran, Jr., Atty. General, Baltimore), for Respondent.

Argued before BELL, C.J., WILNER, CATHELL, HARRELL, BATTAGLIA, GREENE and JOHN C. ELDRIDGE (Retired, Specially Assigned), JJ.

ELDRIDGE, Judge.

In every criminal jury trial, the trial court is required to instruct the jury that the defendant is presumed innocent, that in order to convict the defendant of the charged crime the State must prove the guilt of the defendant beyond a reasonable doubt, and that the jury has a duty to acquit in the absence of such proof. *Merzbacher v. State*, 346 Md. 391, 398, 697 A.2d 432, 436 (1997). The sole issue in this case is whether the trial court's jury instruction on the presumption

of innocence and proof beyond a reasonable doubt was erroneous because it deviated from the Maryland Criminal Pattern Jury Instruction (MPJI–CR) 2:02.[1] We shall hold that the trial court must closely adhere to the approved pattern instruction on the presumption of innocence and reasonable doubt, MPJI–CR 2:02. Because we hold that the trial court is required to instruct the jury closely following MPJI–CR 2:02, we shall hold that the specific instruction given by the trial court in this case constituted reversible error.

## I.

Petitioner, James Allen Ruffin, was charged with several counts of robbery with a deadly weapon and related offenses stemming from an incident in which Ruffin allegedly held William Gosnell and others at gunpoint in the Gosnell home and removed property from that home and from Mr. Gosnell's person. Ruffin was tried, along with a co-defendant, before a jury in the Circuit Court for Baltimore County. The main issue at trial was the disputed identifications of Ruffin and his co-defendant by one of the alleged victims. Following the evidentiary portion of the trial, the judge instructed the jury on the presumption of innocence and the reasonable doubt

---

1.  MPJI–CR 2:02, states as follows:

    "The defendant is presumed to be innocent of the charges. This presumption remains with the defendant throughout every stage of the trial and is not overcome unless you are convinced beyond a reasonable doubt that the defendant is guilty.

    "The State has the burden of proving the guilt of the defendant beyond a reasonable doubt. This burden remains on the State throughout the trial. The defendant is not required to prove [his][her] innocence. However, the State is not required to prove guilt beyond all possible doubt or to a mathematical certainty. Nor is the State required to negate every conceivable circumstance of innocence.

    "A reasonable doubt is a doubt founded upon reason. Proof beyond a reasonable doubt requires such proof as would convince you of the truth of a fact to the extent that you would be willing to act upon such belief without reservation in an important matter in your own business or personal affairs. However, if you are not satisfied of the defendant's guilt to that extent, then reasonable doubt exists and the defendant must be found not guilty."

standard of proof. The court's instructions were in pertinent part as follows:

"The defendants in this case are presumed innocent, just as every defendant who is tried in every courtroom in the United States of America in a criminal charge is. And the presumption remains with the defendants throughout the trial until you believe it has been overcome and are convinced beyond a reasonable doubt that a defendant is guilty.

"The State has the burden of proving the guilt of the defendants beyond a reasonable doubt. The burden remains on the State throughout the trial. The defendants are not required to prove their innocence; however, the State is not required to prove guilt beyond all possible doubt or a mathematical certainty, nor is the State required to negate every conceivable circumstance of innocence.

"A reasonable doubt is a doubt founded upon reason. It's not a fanciful doubt, a whimsical doubt or a capricious doubt. Proof beyond a reasonable doubt requires such proof as would convince you of the truth of a fact to the extent that you would be willing to act upon such belief without reservation in an important matter in your own business or personal affairs."

Defense counsel took exception to the trial court's instruction because it deviated from MPJI–CR 2:02 significantly. Defense counsel argued that the court erred in leaving out the last sentence of that instruction, which would have informed the jury of its duty to acquit if it was not satisfied of the defendant's guilt beyond a reasonable doubt. Defense counsel stated:

[DEFENSE COUNSEL:] Well actually, Your Honor, I don't think Your Honor did it intentionally, but in the reasonable doubt instruction Your Honor left off the last sentence from the reasonable doubt instruction as it's written in the book.

THE COURT: Gave the reasonable doubt instruction I have been giving for 18 years. I don't read the one out of the book.

[DEFENSE COUNSEL:] Okay. Well, I didn't bring that one with me, if I can have a second to go . . .

THE COURT: Yeah, go ahead.

[DEFENSE COUNSEL:] This is in instruction 2:02 of the model instructions. The last sentence says, quote, however, if you are not satisfied of the defendant's guilt to that extent then reasonable doubt exist [sic] and the defendant must be found not guilty.

The Court overruled the objection, stating:

THE COURT: And the reason I don't give that is because it seems only fair to me that you would then continue, if you are convinced of the defendant's guilt beyond a reasonable doubt then you should find the defendant guilty. And I say that throughout the whole thing. So I don't give that intentionally because I think it's only one sided. Haven't done it in 18 years, never had a case reversed. What's next.

[DEFENSE COUNSEL:] Thank you. I would proffer that additional sentence as to instruction 2:02.

Following the trial court's instructions, the jury left the courtroom to deliberate. After twice announcing to the court that they were deadlocked, the jurors were given a modified *Allen* charge.[2] Three hours later, the jury returned its verdict. Ruffin was acquitted on three charges, including two counts of robbery with a deadly weapon and one count of

---

**2.** The term *"Allen* charge" is derived from the instruction given to a deadlocked jury which was considered by the Supreme Court in *Allen v. United States,* 164 U.S. 492, 17 S.Ct. 154, 41 L.Ed. 528 (1896). The instruction is intended to stress to jurors the necessity of unanimity in their decision, as well as to encourage a juror to listen to the viewpoints of the other jurors. The term "modified *Allen* charge" or *"Allen*-type charge" is used to distinguish the jury instruction sanctioned by this Court in *Kelly v. State,* 270 Md. 139, 140, n. 1, 310 A.2d 538, 539, n. 1 (1973), and its progeny, and the Maryland State Bar Association, from the specific instruction given in *Allen v. United States.* That sanctioned instruction is now contained in Maryland Criminal Pattern Jury Instruction 2:01, and this Court has required that MPJI–CR 2:01 be given to the jury, without deviation, in every instance where such an instruction is necessary. *See Thompson v. State,* 371 Md. 473, 484–485, 810 A.2d 435, 442–443 (2002), citing *Graham v. State,* 325 Md. 398, 409 n. 4, 601 A.2d 131, 136 n. 4 (1992), and cases there cited.

kidnapping. He was convicted on one count of robbery with a deadly weapon and of using a handgun during the commission of a felony. He was subsequently sentenced to 15 years imprisonment for the robbery conviction, and he received a five year concurrent sentence, without parole, for the handgun conviction.

Ruffin's appeal to the Court of Special Appeals presented two issues. Ruffin argued that the trial court erred in both denying his motion to suppress an out-of-court photographic identification of him and in failing to properly instruct the jury. Specifically, he argued that the judge failed to inform the jury of its duty to acquit in the absence of proof beyond a reasonable doubt. The Court of Special Appeals, in an unreported opinion, affirmed. On the issue of the jury instruction, the Court of Special Appeals held that the jury instruction "adequately conveyed the State's burden of proving appellant's guilt beyond a reasonable doubt" and that the trial court had no further duty to supplement its instruction as requested.

Ruffin then filed in this Court a petition for a writ of certiorari, contending that the trial court erred in modifying the pattern jury instruction on reasonable doubt and the presumption of innocence, and erred in refusing to give that portion of the instruction regarding the jury's duty to acquit in the absence of proof beyond a reasonable doubt. We granted the petition. *Ruffin v. State,* 389 Md. 398, 885 A.2d 823 (2005).

## II.

Ruffin argues that the jury instruction given by the trial judge violated his procedural rights because key portions of the pattern jury instruction, necessary for the jury to understand its duties, were omitted. In making this argument, Ruffin points to the three deviations from MPJI–CR 2:02 given by the trial court. Ruffin's principal contention is that the trial court erred in omitting the last sentence of MPJI–CR 2:02, which states: "However, if you are not satisfied of the

defendant's guilt to that extent, then reasonable doubt exists and the defendant must be found not guilty." Ruffin argues, as he did at trial, that instructing the jury regarding its duty to acquit in the absence of proof beyond a reasonable doubt is critical to safeguarding his constitutional right to due process. Ruffin maintains that the trial court's justification for leaving out the last sentence of the pattern jury instruction on reasonable doubt, namely, "because I think it's only one-sided," was an attempt to level the playing field which lowered the State's burden of proof.

Ruffin also complains of the trial court's statement that the presumption of innocence remains *"until* you believe it has been overcome and are convinced beyond a reasonable doubt that a defendant is guilty." He points out that the pattern jury instruction uses the word *"Funless "* and not *"until."* Ruffin argues that the use of the word "until," instead of the approved term "unless," implies the inevitability of the burden being overcome by the State. According to Ruffin, such implication does not arise from the pattern jury instruction. Ruffin insists that the trial judge's instruction improperly characterizes the State's burden.

Lastly, Ruffin argues that the trial court erred in adding a sentence from an outdated version of the pattern jury instructions which stated: "It's not a fanciful doubt, a whimsical doubt or a capricious doubt." Ruffin points out that the Maryland State Bar Association's Standing Committee on Pattern Jury Instructions deleted that sentence in 1999 after receiving numerous complaints that the language was confusing to jurors. Thus, Ruffin argues that the use of it in the trial court's instruction confused and misled the jury to believe that a higher degree of doubt was necessary to acquit Ruffin of the charges.

The trial court's instruction involved an additional deviation from MPJI–CR 2:02, when the court added the phrase "just as every defendant who is tried in every courtroom in the United States of America in a criminal charge is" to the description of the presumption of innocence in the first paragraph. Taken

together, Ruffin argues that the additions and omissions of the trial judge in his instruction to the jury on the presumption of innocence and reasonable doubt lowered the burden of proof necessary to convict him.

Ruffin relies upon several opinions from the United States Supreme Court and from this Court which define the concept of reasonable doubt and the presumption of innocence.[3] Those opinions point out that due process mandates that the standard of proof beyond a reasonable doubt be applied in every criminal case and limits the discretion of the trial court in instructing the jury on that standard. Ruffin argues that the trial court's deviation from the pattern jury instruction failed to properly convey the meaning of the reasonable doubt standard to the jury. He relies primarily on *Wills v. State*, 329 Md. 370, 376, 620 A.2d 295, 298 (1993), in arguing that such a failure "is never harmless error."

The State responds to Ruffin's arguments by pointing out that this Court has never held that a defendant's due process rights require that specific language be used when instructing a jury on the standard of proof of beyond a reasonable doubt and the presumption of innocence. In making this argument, the State cites several cases from this Court where we have not required that a specific instruction on reasonable doubt be given.[4] The State takes the position that the trial court sufficiently informed the jury as to the proper standard of proof in this case. The State maintains that the deviations from the pattern jury instruction on reasonable doubt and the

---

3. *See Victor v. Nebraska*, 511 U.S. 1, 114 S.Ct. 1239, 127 L.Ed.2d 583 (1994); *Cage v. Louisiana*, 498 U.S. 39, 111 S.Ct. 328, 112 L.Ed.2d 339 (1990); *In Re Winship*, 397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970); *Merzbacher v. State*, 346 Md. 391, 697 A.2d 432 (1997); *Wills v. State*, 329 Md. 370, 620 A.2d 295 (1993); *Williams v. State*, 322 Md. 35, 585 A.2d 209 (1991).

4. *See Miller v. State*, 380 Md. 1, 30, 843 A.2d 803, 819 (2004); *Hunt v. State*, 345 Md. 122, 151–152, 691 A.2d 1255, 1269–1270 (1997), *cert. denied*, 521 U.S. 1131, 117 S.Ct. 2536, 138 L.Ed.2d 1036 (1997), *Merzbacher v. State*, *supra*, 346 Md. at 399–400, 697 A.2d at 436–437; *Wills v. State*, *supra*, 329 Md. at 382, 620 A.2d at 301; *Montgomery v. State*, 292 Md. 84, 95, 437 A.2d 654, 659 (1981).

presumption of innocence in the instant case were insufficient to render the instruction legally deficient. The State argues that the trial judge followed the pattern instruction closely, gave a clear definition of the necessary terms, and properly conveyed the reasonable doubt principle to the jury.

We shall not in this case rest our decision upon the particular instruction given by the trial court. Instead, we shall hold that, as a matter of non-constitutional Maryland criminal law, in every criminal jury trial, the trial court shall instruct the jury utilizing the Maryland Criminal Pattern Jury Instruction on the presumption of innocence and proof beyond a reasonable doubt, MPJI–CR 2:02. Thus, we now adopt the position set forth in the concurring opinion in *Wills v. State, supra,* 329 Md. at 388–392, 620 A.2d at 304–305. Accordingly, we shall reverse the decisions below and remand this case to the Circuit Court for a new trial.

### III.

The Due Process Clause of the Fourteenth Amendment to the United States Constitution and Article 24 of the Maryland Declaration of Rights guarantee that a criminal defendant shall only be convicted upon proof beyond a reasonable doubt. *In Re Winship,* 397 U.S. 358, 361–364, 90 S.Ct. 1068, 1071–1073, 25 L.Ed.2d 368 (1970); *Stevenson v. State,* 289 Md. 167, 183, 423 A.2d 558, 567 (1980); *State v. Grady,* 276 Md. 178, 181–182, 345 A.2d 436, 438 (1975); *Lambert v. State,* 193 Md. 551, 558, 69 A.2d 461, 464 (1949). The reasonable doubt standard of proof is an essential component in every criminal proceeding. *Merzbacher v. State, supra,* 346 Md. at 398, 697 A.2d at 436; *Wills v. State, supra,* 329 Md. at 375–376, 620 A.2d at 297–298, citing *In Re Winship, supra,* 397 U.S. at 361–364, 90 S.Ct. at 1071–1073, 25 L.Ed.2d 368; *Lambert v. State, supra,* 193 Md. at 558, 69 A.2d at 464. Thus, in Maryland it is mandatory for the trial judge to give an instruction to the jury explaining reasonable doubt.[5] *See*

---

**5.** Courts in several jurisdictions have also held that it is mandatory to give a jury instruction explaining the term "reasonable doubt" in

*Merzbacher v. State, supra,* 346 Md. at 398, 697 A.2d at 436. As we stated in *Merzbacher, supra,* 346 Md. at 398, 697 A.2d at 436, "[t]he reasonable doubt standard is such an indispensable and necessary part of any criminal proceeding that, with respect to a case tried before a jury, the trial court's failure to inform the jury of that standard constitutes reversible error."

In *Wills v. State, supra,* 329 Md. 370, 620 A.2d 295, this Court examined extensively the reasonable doubt standard of proof and the necessity for a trial judge to properly instruct a jury on the meaning of a reasonable doubt in criminal cases. We stated in *Wills* (329 Md. at 376, 620 A.2d at 298):

"Its inclusion in the court's charge is so indispensable that the Supreme Court has indicated that failure to instruct the jury of the requirement of the reasonable doubt standard is never harmless error. *Jackson v. Virginia,* 443 U.S. 307, 320, n. 14, 99 S.Ct. 2781 [2790 n. 14], 61 L.Ed.2d 560, *reh. denied,* 444 U.S. 890, 100 S.Ct. 195, 62 L.Ed.2d 126 (1979). *Montgomery v. State,* 292 Md. 84, 93, 437 A.2d 654 (1981). *See Williams,* 322 Md. at 42, 585 A.2d 209."

We held in *Wills* that the trial court's jury instruction on reasonable doubt was erroneous because it failed to articulate clearly the meaning of the reasonable doubt standard. There, the trial court's instruction explained the standard in terms of weighing options, stating: "if you weigh all of the factors, if you weigh the things that say, I should do it, and the things that say, I shouldn't do it, and you decide to go forward, then you don't have a reasonable doubt." 329 Md. at 387, 620 A.2d at 303. The trial court in *Wills* further substituted, among other things, "nagging doubt" for the term "without reservation" found in MPJI–CR 2:02. *Ibid.* Looking at the instruction as a whole, this Court held that the standard, as ex-

criminal cases. *See e.g., United States v. Pepe,* 501 F.2d 1142, 1143 (10th Cir.1974); *Friedman v. United States,* 381 F.2d 155, 160–61 (8th Cir.1967); *Smith v. U.S.,* 709 A.2d 78, 79 (D.C.1998); *State v. Holm,* 93 Idaho 904, 908, 478 P.2d 284, 288 (1970); *People v. Giamanco,* 67 App. Div.2d 1008, 1009, 413 N.Y.S.2d 746, 747 (1979); *Commonwealth v. Young,* 456 Pa. 102, 111–112, 317 A.2d 258, 262–263 (1974); *State v. Desrosiers,* 559 A.2d 641, 645 (R.I.1989).

plained, was more like the preponderance of the evidence standard and "did not measure up to an acceptable explanation of the reasonable doubt standard" because it lowered the State's burden of proof. 329 Md. at 388, 620 A.2d at 303.

Although the majority in *Wills* did not depart from the previous holdings that a trial judge could fashion his or her own reasonable doubt instruction so long as it did not confuse or mislead the jury, or prejudice the accused, the Court did endorse the reasonable doubt pattern jury instruction adopted by the Committee for the Maryland State Bar Association which fashioned the Maryland Pattern Jury Instructions, stating (329 Md. at 383, 620 A.2d at 301):

> "The fourteen members of the Committee which fashioned the Maryland Pattern Jury Instructions–Criminal 1991 (MPJI–CR) consisted of judges at the trial and appellate level, prosecutors and former prosecutors, defense attorneys, law professors and other distinguished members of the Maryland bar.

\* \* \*

> "We are content to accept the wisdom of such learned and experienced men and women, active in the arena, sitting on the bench and on opposite sides of the trial table. . . . "

Moreover, the concurring opinion in *Wills v. State, supra,* 329 Md. at 388–389, 620 A.2d at 304, would have required trial judges to use MPJI–CR 2:02 when instructing a jury on the presumption of innocence and the reasonable doubt standard of proof.

In *Merzbacher v. State, supra,* 346 Md. at 399–400, 697 A.2d at 436, this Court again examined the sufficiency of the trial court's instruction on the reasonable doubt standard of proof and the presumption of innocence. We again endorsed the pattern jury instruction drafted by the Committee. We recommended that the pattern jury instruction on reasonable doubt be followed in order to ensure that the jury understands the instruction and the defendant is not prejudiced. This Court cautioned (346 Md. at 404, 697 A.2d at 438–439):

"[W]e strongly recommend that trial courts closely adhere to the reasonable doubt instruction endorsed by *Wills* and articulated in MPJI–CR 2:02. Human experience has shown that language is, at best, an imperfect form of communication. Reasonable doubt is a vague and difficult concept that must be utilized by jurors in the demanding intellectual process of interpreting evidence presented to them in the course of a criminal proceeding. The concept evades formalistic precision and does not lend itself to quantification by the mechanical laws of the physical world. To suggest that reasonable doubt is best defined by a particular set of words strung in a specific order pretends a mathematical rectitude which, even in the best of circumstances, does not exist in the deliberative process. In defining reasonable doubt for jurors, a trial court must use its best legal judgment and explain the term in light of the principles we articulated in *Wills, see* 329 Md. at 382–83, 620 A.2d at 301, and avoid explanations and examples which undermine the State's burden proof and the defendant's presumption of innocence."

Many judges, attorneys and legal scholars in Maryland, as well as in other jurisdictions, have endorsed the use of an approved pattern jury instruction on reasonable doubt and the presumption of innocence to ensure that a criminal defendant's due process rights are protected and to create uniformity in criminal jury trials. *See Miller v. State,* 380 Md. 1, 30, 843 A.2d 803, 819 (2004) (stating that the concurring opinion in *Wills* "wisely suggested that trial judges 'closely adhere' to Maryland Criminal Pattern Jury Instruction 2:02 when attempting to define 'reasonable doubt' "); *Wills v. State, supra,* 329 Md. at 388–392, 620 A.2d at 304–305 (concurring opinion); *Himple v. State,* 101 Md.App. 579, 584–585, 647 A.2d 1240, 1243 (1994). *See also Arizona v. Portillo,* 182 Ariz. 592, 596, 898 P.2d 970, 974 (Ariz.1995) (holding that "in every criminal case trial courts shall give the reasonable doubt instruction" set forth by the court); *Winegeart v. State,* 665 N.E.2d 893, 902 (Ind.1996) (authorizing and recommending the use of a specific pattern jury instruction on reasonable doubt without

supplementation or embellishment); *State v. Caffey,* 365 S.W.2d 607, 612 (Mo.1963) (admonishing the trial court for its failure to adhere to the approved instruction on reasonable doubt and the presumption of innocence in a criminal trial and directing that " 'it is better to adhere to instructions that have received the approval of this court and not to attempt definitions which add nothing to the meaning of well-understood terms' "), and cases there cited; *City of Minot v. Rubbelke,* 456 N.W.2d 511, 515 (N.D.1990) (strongly recommending that the trial courts adhere to the pattern jury instruction on "reasonable doubt"). *See also* Missouri Revised Statute § 546.070(4) and Missouri Rule of Criminal Procedure 28.02 (directing that "[i]n every trial for a criminal offense the court shall instruct the jury in writing ... which instructions shall include a definition of the term reasonable doubt" in accordance with the pattern instruction); Nevada Revised Statutes Annotated § 175.211 (providing a definition of reasonable doubt and directing that "[n]o other definition of reasonable doubt may be given by the court to juries in criminal actions in this state"); Ohio Revised Code Annotated § 2901.05 (providing that "[a]s part of its charge to the jury in a criminal case, the court shall read the definitions of 'reasonable doubt' and 'proof beyond a reasonable doubt,' contained in [this statute]"). For further discussion of the statutes and case law requiring that a specific reasonable doubt instruction be given to the jury in a criminal trial, *see* Barbara E. Bergman and Nancy Hollander, *Wharton's Criminal Evidence* § 2:4, *Definition of Reasonable Doubt* (2005); and Henry A. Diamond, *Reasonable Doubt: To Define, Or Not To Define,* 90 Colum. L.Rev. 1716, 1718 (1990).

The reasoning in *State v. Portillo, supra,* 182 Ariz. at 595–596, 898 P.2d at 973–974, is particularly instructive. In *Portillo,* the Supreme Court of Arizona examined whether the trial courts should be required to give a specific definition of reasonable doubt in all criminal jury trials. The Arizona Supreme Court, after discussing the various views of legal scholars and decisions from courts across the country on whether a definition of reasonable doubt should be given in

criminal trials and, if so, what format such a definition should follow, held that "in every criminal case trial courts shall give the [approved pattern jury instruction] on reasonable doubt. . . ." 182 Ariz. at 595, 898 P.2d at 973. In so holding, the Court reasoned (*Portillo*, 182 Ariz. at 595–596, 898 P.2d at 973–974) (emphasis added, footnotes omitted):

"Proof beyond a reasonable doubt has 'traditionally been regarded as the decisive difference between criminal culpability and civil liability.' *Jackson v. Virginia*, 443 U.S. 307, 315, 99 S.Ct. 2781, 2787, 61 L.Ed.2d 560 (1979). It follows naturally, we think, that the meaning of such a fundamental concept should not be left either to chance or the random, ad hoc interpretation of different trial courts and counsel. Studies show that jurors in fact often misunderstand instructions in general and the meaning of reasonable doubt in particular. *See, e.g.,* Walter W. Steele & Elizabeth G. Thornburg, *Jury Instructions: A Persistent Failure to Communicate*, 67 N.C.L.Rev. 77, 88–94 (1988); David U. Strawn & Raymond W. Buchanan, *Jury Confusion: A Threat to Justice*, 59 Judicature 478, 480–82 (1976). Significantly also, regularly defining reasonable doubt reduces the number of mistrials, saving scarce judicial and public resources. Norbert L. Kerr & Robert S. Atkin, *Guilt Beyond a Reasonable Doubt: Effects of Concept Definition and Assigned Decision Rule on the Judgments of Mock Jurors*, 34 J. Personality & Soc. Psychol. 282, 285–286 (1976) (finding that fewer hung juries result when reasonable doubt is defined). Thus, in line with what we believe is the majority and sounder view, we conclude that the 'issue is simply too important to mention and not to explain.' John S. Siffert, *Instructing on the Burden of Reasonable Doubt*, 8 U. Bridgeport L.Rev. 365, 367 (1987).

"Those who would not define reasonable doubt . . . argue that attempts to do so may only further confuse jurors or even lower the state's standard of proof. *See Portillo*, 179 Ariz. at 121, 876 P.2d at 1156. Those assertions, however, appear to rely too heavily on 'undocumented observations that attempts to define 'beyond a reasonable doubt' do not

usually ... mak[e] it clearer.' Siffert, *supra*, at 366. Opponents also assume, erroneously in our view, that no definition can accurately clarify the meaning of reasonable doubt. *See Portillo*, 179 Ariz. at 121, 876 P.2d at 1156. Concededly, courts and commentators have struggled to agree on a single clarifying definition. That fact, however, cuts in favor of defining the term, not against it. If judges and legal scholars struggle to define reasonable doubt, it is unrealistic to expect a lay jury to properly grasp and apply the stark words. As one distinguished jurist and advocate of defining reasonable doubt recently said, 'it [is] rather unsettling [to think] that we are using a formulation that we believe will become less clear the more we explain it.' Jon O. Newman, *Beyond "Reasonable Doubt"*, 68 N.Y.U.L.Rev. 979, 984 (1993). Like many others, we are confident that reasonable doubt can be defined in simple terms that will neither confuse nor mislead the jury. *E.g., Victor*, 511 U.S. at [28], 114 S.Ct. at 1254 (Blackmun and Souter, JJ., concurring).

"Much of the confusion about defining reasonable doubt likely stems from the multiple and varying definitions courts have developed over the years, some of which justify the criticism that definitions can distort its meaning. *E.g., Cage*, 498 U.S. at 40, 111 S.Ct. at 329 (doubt must be founded 'upon a real tangible substantial basis' and such 'as would give rise to a grave uncertainty'). *See generally* Irene M. & Yale L. Rosenberg, " *'Perhaps What Ye Say Is Based Only on Conjecture'*" *Circumstantial Evidence, Then and Now*, 31 Hous.L.Rev. 1371, 1408–10 (1995) (summarizing various definitions). Lacking clear guidance from this court, Arizona courts that have defined reasonable doubt have typically but not uniformly used the [Arizona pattern jury instruction on reasonable doubt] formulation. *Compare State v. West*, 176 Ariz. 432, 444 n. 3, 862 P.2d 192, 204 n. 3 (1993) (RAJI 5) *and State v. Mays*, 105 Ariz. 47, 49, 459 P.2d 307, 309 (1969) ('doubt that would cause a reasonable man to pause or hesitate when called upon to act upon the most important affairs of life'). Allowing varying defini-

tions, however, detracts from the goal of a uniform and equal system of justice. ***Use of a standard definition thus will eliminate confusion and foster fairness for defendants, the state, and jurors alike.*** As noted above, the fact that some errors involving reasonable doubt definitions are structural and cannot be deemed harmless also favors requiring Arizona courts to use a single, uniform instruction."

The principle of requiring a uniform pattern jury instruction on an important and recurring matter in every criminal jury trial is not a new one in Maryland. As previously mentioned, the concurring opinion in *Wills v. State, supra,* 329 Md. at 388–389, 620 A.2d at 304, would have required that "trial judges ... instruct on the issue of reasonable doubt in the form suggested by Maryland Criminal Pattern Jury Instruction 2:02," and cautioned that trial judges should "resist the temptation to stray from, or embellish upon, that instruction." The concurring opinion went on to point out that the Court should adopt the "approach taken by the Court in *Kelly v. State,* 270 Md. 139, 144, 310 A.2d 538 (1973), dealing with the giving of a modified *Allen* charge,[6] and instruct trial judges that they should 'closely adhere' to the approved instruction...." 329 Md. at 391, 620 A.2d at 305.

One year later, Judge Cathell, writing for the Court of Special Appeals in *Himple v. State, supra,* 101 Md.App. at 584–585, 647 A.2d at 1243, endorsed the approach of the concurring opinion in *Wills.* The Court of Special Appeals stated in *Himple (Ibid.):*

"We agree. Those of us who have served on the trial courts are well aware of the temptation to embellish upon the instruction. Many trial judges, including some who are now on this Court, and many members of the Bar, have considered the concept of reasonable doubt to be a vague, almost wraith-like, concept that needs to be further explained (beyond the pattern instruction). Nevertheless, the

---

**6.** *See* n. 2, *supra.*

appellate cases of this State are replete with reversals of convictions because of the attempts of those of us who have tried. Rare indeed is the veteran embellishing trial judge who has not been reversed by reason of the embellishment.

"None of our many trial court embellishments, if objectively analyzed, better explain the concept than the pattern instruction whose stark simplicity was created by the bench and the bar in order to avoid the problems of embellishment. While we cannot go further than the Court of Appeals decision in *Wills,* we note for the benefit of the trial courts that it is our view that the risk of reversal arises when an instruction departs from the pattern instruction and the risk of reversal increases with the degree of departure from that pattern instruction."

As we have noted on several occasions in the past, this Court and the Court of Special Appeals have regularly faced the issue of whether a trial court's particular instruction on reasonable doubt and the presumption of innocence is misleading or otherwise erroneous. *See, e.g., Miller v. State, supra,* 380 Md. 1, 843 A.2d 803; *Merzbacher v. State, supra,* 346 Md. 391, 697 A.2d 432; *Wills v. State, supra,* 329 Md. 370, 620 A.2d 295; *Williams v. State,* 322 Md. 35, 585 A.2d 209 (1991); *Robertson v. State,* 295 Md. 688, 457 A.2d 826 (1983); *State v. McClellan,* 2006 WL 1805976 (2006); *Graham v. State,* 151 Md.App. 466, 827 A.2d 874 (2003); *Himple v. State, supra,* 101 Md.App. 579, 647 A.2d 1240; *Joyner–Pitts v. State,* 101 Md. App. 429, 647 A.2d 116 (1994). Those cases caution against rambling instructions, which deviate substantially from the pattern jury instruction and which change the State's substantial burden of proof. Still, we have been faced, time and time again, with instructions which incorrectly set forth the burden of proof on the State, or which are inconsistent with the basic constitutional rights of the criminal defendant.

Consequently, we now take the same approach delineated in *Kelly v. State, supra,* 270 Md. 139, 310 A.2d 538, and its progeny, addressing the modified *Allen* charge, now MPJI–CR 2:01, and apply that approach to the jury instruction on

the presumption of innocence and reasonable doubt found in MPJI–CR 2:02. *See Thompson v. State,* 371 Md. 473, 810 A.2d 435 (2002); *Goodmuth v. State,* 302 Md. 613, 490 A.2d 682 (1985); *Burnette v. State,* 280 Md. 88, 371 A.2d 663 (1977). In *Burnette v. State, supra,* this Court addressed the propriety of an *Allen* charge given to a deadlocked jury in a criminal trial. We disavowed the use of the old *Allen* charge instruction because we found the language contained in that instruction to be coercive in its suggestion that minority members of a jury should give deference to the view of the majority. 280 Md. at 100, 371 A.2d. at 669. We stated that "the instruction might tend to unduly strengthen the majority's convictions, perhaps making the majority less willing to seriously engage in further deliberations." *Ibid.* We went on to hold that the particular instruction given in *Burnette* constituted reversible error. In so doing, we emphasized in *Burnette,* as we had in *Kelly,* that if a trial court gives a modified *Allen* instruction it must "closely adhere" to the ABA Standards. *Burnette,* 280 Md. at 99–100, 371 A.2d at 668. We held that "deviations in substance will not meet with our approval." 280 Md. at 101, 371 A.2d at 669. We later specifically endorsed the use of MPJI–CR 2:01, which incorporated the ABA Standards for the "duty to deliberate" espoused in *Kelly* and affirmed in *Burnette* and *Goodmuth. See Thompson v. State, supra,* 371 Md. at 484–485, 810 A.2d at 442–443, citing *Graham v. State, supra,* 325 Md. at 409 n. 4, 601 A.2d at 136 n. 4.

Much like the instruction on the jury's duty to deliberate found in MPJI–CR 2:01, the presumption of innocence and the reasonable doubt principles do not change from case to case. The identical principles are applicable in every criminal jury trial, regardless of the issues in that particular trial. Moreover, the necessity of uniformity in the trial court's instructions to the jury on the presumption of innocence and the reasonable doubt standard of proof goes further than the need for such uniformity in giving the modified *Allen* charge because the presumption of innocence and reasonable doubt standard are present in *every* criminal case. Every defendant in every criminal jury trial is entitled to the same presumption

of innocence and reasonable doubt standard of proof. Uniformity in defining those terms for the jury, by giving the pattern jury instruction, ensures that all defendants will equally receive an appropriate definition of the presumption of innocence and reasonable doubt standard of proof.

We hold that in every criminal jury trial, the trial court is required to instruct the jury on the presumption of innocence and the reasonable doubt standard of proof which closely adheres to MPJI–CR 2:02. Deviations in substance will not be tolerated.[7]

*JUDGMENT OF THE COURT OF SPECIAL APPEALS REVERSED, AND CASE REMANDED TO THAT COURT WITH INSTRUCTIONS TO REVERSE THE JUDGMENT OF THE CIRCUIT COURT FOR BALTIMORE COUNTY AND REMAND THE CASE TO THE CIRCUIT COURT FOR A NEW TRIAL. COSTS IN THIS COURT AND IN THE COURT OF SPECIAL APPEALS TO BE PAID BY BALTIMORE COUNTY.*

Dissenting Opinion by BATTAGLIA, Judge, which HARRELL and GREENE, Judges, join.

I respectfully dissent. This Court has never required that a trial judge give a verbatim recitation of the Maryland Criminal Pattern Jury Instruction defining reasonable doubt for the

---

7. Our holding in this case represents a change in a Maryland common law principle and not an overruling of prior cases on the ground that they were erroneously decided. Consequently, the defendant Ruffin is entitled to the benefit of our holding, but, otherwise, the holding shall be applied only prospectively. In other words, today's holding "applies to the instant case[ ] . . . and to all [criminal] trials commencing and trials in progress on or after the date this opinion is filed." *Owens–Illinois v. Zenobia,* 325 Md. 420, 469–470, 601 A.2d 633, 657–658 (1992). *See, e.g.,* the discussions in *Polakoff v. Turner,* 385 Md. 467, 485–489, 869 A.2d 837, 848–851 (2005); *State v. Hawkins,* 326 Md. 270, 291–295, 604 A.2d 489, 500–502 (1992); *Julian v. Christopher,* 320 Md. 1, 10–13, 575 A.2d 735, 739–741 (1990); *American Trucking Associations v. Goldstein,* 312 Md. 583, 592 n. 7, 541 A.2d 955, 959 n. 7 (1988); *Kelley v. R.G. Industries, Inc.,* 304 Md. 124, 162, 497 A.2d 1143, 1162 (1985); *Boblitz v. Boblitz,* 296 Md. 242, 275, 462 A.2d 506, 522 (1983); *Williams v. State,* 292 Md. 201, 217–220, 438 A.2d 1301, 1308–1310 (1981).

trial court's instruction to be deemed an accurate statement of the law. Moreover, it is inconceivable that this Court could issue a holding requiring that trial judges provide the Maryland Criminal Pattern Jury Instruction explanation of reasonable doubt without first addressing whether the instruction at issue in the present case was defective under our established caselaw. The majority is essentially overruling our precedent regarding this issue in favor of the reasoning explicated in the concurrence in *Wills v. State*, 329 Md. 370, 620 A.2d 295 (1993), which advocated the strict adherence to the language of the pattern jury instruction.

We consistently have stated that "[o]ur opinions have refrained from adopting a boiler plate explanation of reasonable doubt." *Wills*, 329 Md. at 382, 620 A.2d at 301; *see also Merzbacher v. State*, 346 Md. 391, 399, 697 A.2d 432, 436 (1997) ("While we agree that [Maryland Criminal Pattern Jury Instruction] 2:02 provides an adequate, if not preferable, explanation of the reasonable doubt standard, we in no way intimated in *Wills* that 2:02 is the definitive statement of the concept."); *Hunt v. State*, 345 Md. 122, 151–52, 691 A.2d 1255, 1269 (1997) (stating that there are no magic words that must be included in a reasonable doubt instruction for it to be acceptable); *Montgomery v. State*, 292 Md. 84, 95, 437 A.2d 654, 659–60 (1981) ("[W]e hasten to add that this is not the only satisfactory explanation of reasonable doubt and we decline to prescribe an instruction that will apply in every case."). Moreover, our jurisprudence is congruent with the United States Supreme Court's admonition in *Victor v. Nebraska*, 511 U.S. 1, 114 S.Ct. 1239, 127 L.Ed.2d 583 (1994), that

> [S]o long as the court instructs the jury on the necessity that the defendant's guilt be proved beyond a reasonable doubt, . . . the Constitution does not require that any particular form of words be used in advising the jury of the government's burden of proof.

*Id.* at 5, 114 S.Ct. at 1243, 127 L.Ed.2d at 590.

The instruction in the present case provided the jury with an adequate alternative definition of the concept of reasonable

doubt.  The trial judge informed that jury that the defendant was presumed innocent, that the State bears the burden of proving the guilt of the defendant beyond a reasonable doubt, which he defined as "proof as would convince you of the truth of a fact to the extent that you would be willing to act upon such belief without reservation in an important matter in your own business or personal affairs," and that the defendant is not required to prove his innocence.  The definition of "reasonable doubt" as given is accurate.  The deviations from the pattern jury instruction did not result in an erroneous description of the term.  The jury was not led to believe that the State bore a lesser burden of proof, nor was the jury misinformed as to the defendant's burden of proof.

Mr. Ruffin asserts that the trial judge's omission of the final sentence of the pattern jury instruction renders the instruction constitutionally deficient.  I would disagree.  The final sentence, which states, "However, if you are not satisfied of the defendant's guilt to that extent, then reasonable doubt exists and the defendant must be found not guilty," merely iterates the logical conclusion should the jurors determine that the State has not carried its burden of proof regarding the defendant's guilt.  The sentence is not required for a juror to adequately understand the meaning of reasonable doubt, nor does its omission result in the instruction being skewed in favor of the State.  The substance of the instruction given to the jury ensures that the jury knew that it should return a verdict of guilty only upon the State proving the defendant's guilt beyond a reasonable doubt, and that conversely it is required to return a verdict of not guilty if a reasonable doubt existed.  Therefore, 1 would conclude that the absence of the final sentence of the pattern jury instruction did not deprive Mr. Ruffin of a substantive part of the instruction as he asserts and that the instruction passed constitutional muster.

Mr. Ruffin's two other contentions, specifically that the trial judge substituted "until" for "unless," and that he added to the definition of reasonable doubt that it is "not a fanciful doubt, a whimsical doubt or a capricious doubt," were not raised at trial, and as such are only reviewable under the plain error

doctrine. We previously have noted that our discretion under the plain error doctrine should only be brought to bear when the error raised is "compelling, extraordinary, exceptional, or fundamental to assure the defendant a fair trial." *Richmond v. State,* 330 Md. 223, 236, 623 A.2d 630, 636 (1993). I would conclude that, if we were to address the remaining issues raised by Mr. Ruffin, there was no error.

Mr. Ruffin's assertion that the substitution of "until" for "unless" is error is not supported by our jurisprudence. In our decision in *Williams v. State,* 322 Md. 35, 585 A.2d 209 (1991), we noted that a presumption of innocence instruction should include the "heart of the principle," which is that "the accused stands innocent *until* the jury is convinced that he is guilty upon evidence placed before it which is legally sufficient to sustain its verdict." *Id.* at 48, 585 A.2d at 215. Because we have previously approved of the use of "until" in delineating the "heart of the principle," the trial judge cannot have erred in complying with our prior iteration. Moreover, because the rest of the trial judge's instruction was nearly identical to the pattern jury instruction, I would find that the change of the single word was not error.

Furthermore, I would find that Mr. Ruffin's final contention also is without merit. He argues that the description of reasonable doubt as "not a fanciful doubt, a whimsical doubt or a capricious doubt" results in a "higher degree of doubt" required. This phrase was part of the Maryland Pattern Jury Instruction until 1999, when it was omitted in the course of the revision of the pattern instructions. The Supreme Court in *Victor v. Nebraska, supra,* described reasonable doubt as not being "[a] fanciful doubt." 511 U.S. at 17, 114 S.Ct. at 1248, 127 L.Ed.2d at 597. Even assuming that such language was error, the instruction as a whole still clearly and properly conveyed the principles underlying reasonable doubt to the jury. Therefore, I would conclude that the instruction given in the case *sub judice* is consistent with the principles explicated in our prior caselaw regarding jury instructions on reasonable doubt.

Although the majority purports to be urging merely that the trial courts "closely adhere" to the reasonable doubt instruction delineated in the Maryland Criminal Pattern Jury Instruction, as this Court has done throughout its precedent, it is in fact rejecting our prior assertion that "[t]o suggest that reasonable doubt is best defined by a particular set of words strung in a specific order pretends a mathematical rectitude which, even in the best of circumstances, does not exist in the deliberative process." *Merzbacher,* 346 Md. at 404, 697 A.2d at 438. I would continue to entrust the formulation of jury instructions about reasonable doubt to the trial court's "best legal judgment" within the principles delineated in *Wills:*

It is better that the explanation begin with a statement of the principle of presumption of innocence which places the burden of proof on the State, where it remains throughout the trial. The State is not required to prove guilt beyond all possible doubt or to a mathematical certainty, but it is not enough if the evidence shows that the defendant is *probably* guilty. Nor is it sufficient that reasonable doubt is defined only by its own terms. The explanation should focus on the term 'reasonable doubt,' so as to bring home to the jury clearly that the corpus delicti of the crime and the criminal agency of the accused must be proved *beyond* a reasonable doubt.

*Wills,* 329 Md. at 382–83, 620 A.2d at 301. In the present case, the instruction did not expand upon the pattern instruction; rather, it adhered to the simple austerity of the suggested pattern instruction.

In light of our established precedent, I would affirm the judgment of the Court of Special Appeals and Judges Harrell and Greene authorize me to state that they join this dissent.