REPORTED

IN THE COURT OF SPECIAL APPEALS

OF MARYLAND

No. 850

September Term, 2014

DIMONIQUE S. ANDERSON

v.

STATE OF MARYLAND

Meredith,
Berger,
Thieme, Raymond A., Jr.
  (Retired, Specially Assigned),

JJ.

Opinion by Thieme, J.

Filed: April 27, 2016

A jury in the Circuit Court for Harford County convicted Dimonique S. Anderson, appellant, of robbery with a dangerous weapon, robbery, conspiracy to commit robbery, theft of property valued under $1,000, and second degree assault. He presents the following question for our review:

> Did the court err in precluding defense counsel from arguing that the jurors should put themselves or one of their family members in the place of the defendant in determining whether the State had met its burden of proof beyond [a reasonable doubt]?

Because we conclude that the trial court did not abuse its discretion in precluding that closing argument, we shall affirm appellant's convictions.

## FACTS AND LEGAL PROCEEDINGS

In a six-day trial, the State presented evidence that appellant conspired to rob Austin Nierwinski and Noah Davis, who were fellow guests at a house party, then provided "the muscle" as his accomplices completed the crime. Because much of that evidence is not pertinent to the issue raised in this appeal, we shall summarize it briefly.

Nierwinski and Davis testified that during a June 8, 2012 party at the home of a high school acquaintance in Jarrettsville, they were accosted by a group of fellow guests, one of whom was appellant. There was evidence, including appellant's own statements, that Gino Abt, appellant, and several others were aware that before Nierwinski arrived at the party, he received cash as high school graduation gifts. A group led by Abt, who testified for the State, planned to steal the money, with appellant saying, "I got your back." Abt pulled a knife on Nierwinski and Davis, took the keys to Nierwinski's car, removed Nierwinski's wallet, and took $355 in cash that Nierwinski had received as graduation gifts. Although

appellant admitted being present, he disputed the State's evidence that he knew about, encouraged, aided in, and received cash from the robbery.

Near the end of his closing argument, appellant's defense counsel made the following comments regarding the reasonable doubt standard, prompting the State to object:

> [DEFENSE COUNSEL]: The State has to prove beyond a reasonable doubt. And is this reasonable doubt on any point? You decide. Again, if this in your mind you think well, maybe he's involved, State hasn't proven its case. Fairly convincing, State hasn't proven its case. Is there no reasonable doubt in your mind? That's the question. That's the question.
>
> **Anybody, anybody could be in that chair. Anybody in this courtroom. Would you feel as if justice were done i[f] your family member or you were in that chair based on this evidence?**
>
> [PROSECUTOR]: Objection, Your Honor.

(Emphasis added.)

In a bench conference, the prosecutor argued that defense counsel was improperly "personalizing the case," comparing his argument to prohibited "golden rule" arguments asking jurors to put themselves or family members in the shoes of the victim:

> [PROSECUTOR]: Your Honor, he was personalizing the case to the jury at that point. That wouldn't be any different than if I asked them to essentially imagine that was your family member that was a victim of the crime.
>
> [DEFENSE COUNSEL]: Uh-huh.
>
> [PROSECUTOR]: That would be the same type of objection. It's improper. I ask that it be stricken and the Court instruct the jury that it is improper.
>
> [DEFENSE COUNSEL]: No. I specifically asked if they would feel as if justice were done based on these facts if they were in that chair. That's all.

2

[PROSECUTOR]: Or a family member.

[DEFENSE COUNSEL]: I didn't say, would you be happy? Would you feel good? I said, would you feel justice would be done. And I think that takes it out of the realm of any personalization.

THE COURT: What you said was, "if you were in that chair or if your family member were in that chair," and I think that is asking the jury to put themselves in the position of the defendant. I think you are asking the jury to put themselves or a family member in the position of the defendant, and I don't believe that is proper argument. I'm gonna sustain the objection and instruct the jury to disregard. How would you like me to phrase it?

[DEFENSE COUNSEL]: Okay. I'm gonna object to that because I think it's proper.

THE COURT: Fine, [defense counsel]. Your objection is noted for the record.

[PROSECUTOR]: I would suggest that the Court say that they're not permitted to inject themselves into the person of the defendant or something to that effect.

THE COURT: Just to identify what the language was that I'm going to strike the portion of [defense counsel's] argument, which invited the jurors to put themselves in the defendant's position and they are to disregard it. And your objection is noted.

[DEFENSE COUNSEL]: Okay.

(Counsel and the defendant returned to trial table and the proceedings resumed in open court.)

THE COURT: Ladies and Gentlemen, I'm going to strike the portion of [defense counsel's] comments which invited you to put yourself in the place of the defendant or family members in place of the defendant. And you are instructed to disregard that.

The jury found appellant guilty of robbing Nierwinski and assaulting Davis. He was

convicted of robbery, robbery with a dangerous weapon, and theft from Nierwinski, as well

as conspiracy to commit robbery of both Nierwinski and Davis, and assault of both Nierwinski and Davis. He was found not guilty of robbing Davis, robbing Davis with a dangerous weapon, and wearing and carrying a dangerous weapon openly with intent to injure.

## DISCUSSION

In appellant's view, the challenged argument by defense counsel was proper, so that the trial court prejudicially abused its discretion by sustaining the State's objection to it. For the reasons explained below, we disagree.

### Standards Governing Closing Argument

"[A]ttorneys are afforded great leeway in presenting closing arguments to the jury." *Degren v. State*, 352 Md. 400, 429 (1999). Closing argument typically does not warrant appellate relief unless it "exceeded the limits of permissible comment." *Lee v. State*, 405 Md. 148, 164 (2008). "Generally, counsel has the right to make any comment or argument that is warranted by the evidence proved or inferences therefrom" and, in doing so, to "indulge in oratorical conceit or flourish[.]" *Wilhelm v. State*, 272 Md. 404, 412-13 (1974). As long as "counsel does not make any statement of fact not fairly deducible from the evidence his argument is not improper[.]" *Id.* at 412. "What exceeds the limits of permissible comment or argument by counsel depends on the facts of each case." *Smith and Mack v. State*, 388 Md. 468, 488 (2005). Thus, the propriety of prosecutorial argument must be decided "contextually, on a case-by-case basis." *Mitchell v. State*, 408 Md. 368, 381 (2009). Because

4

"[a] trial court is in the best position to evaluate the propriety of a closing argument as it relates to the evidence adduced in a case[,]" the exercise of its broad discretion to regulate closing argument will not be overturned "unless there is a clear abuse of discretion that likely injured a party." *Ingram v. State*, 427 Md. 717, 726 (2012).

## Appellant's Challenge

We are not persuaded that the trial court abused its discretion by striking this portion of defense counsel's closing argument about reasonable doubt. In commenting on the State's burden of proof, counsel's closing argument must not undermine the judicially approved pattern definition of reasonable doubt. As the Court of Appeals held in *Ruffin v. State*, 394 Md. 355, 370 (2006), the standardized instruction on the presumption of innocence and reasonable doubt "eliminate[s] confusion and foster[s] fairness for defendants, the state, and jurors alike." For similar reasons, counsel may not use closing argument to inject variances that encourage the jury to apply a standard of proof different from the approved pattern instruction on reasonable doubt. For example, in *Ingram*, 427 Md. at 720, 726, the Court of Appeals held that the trial court did not abuse its discretion in restricting defense closing argument comparing the reasonable doubt standard to a suspicion, reasonable articulable suspicion, probable cause, and a "tie." The Court reasoned that "allowing counsel to expand too far afield upon the trial court's binding jury instructions during closing argument carries with it a similar danger that the jury may misapply the law." *Id.* at 728-29.

5

As the State points out, the challenged argument improperly suggested that the reasonable doubt standard could not be satisfied unless jurors, after putting themselves or a family member in Anderson's position, could "feel" that "justice would be done" by returning guilty verdicts. The trial court recognized that this invited jurors to personalize their verdict in a manner comparable to prohibited "golden rule" closing arguments asking jurors to place themselves in the shoes of the victim. *See Lawson v. State*, 389 Md. 570, 594 (2005) ("When a jury is asked to place themselves in the shoes of the victim, the attorney improperly appeals to their prejudices and asks them to abandon their neutral fact finding role.").

The trial court did not abuse its discretion in curtailing defense counsel's invitation to jurors to use this alternative concept of reasonable doubt. Defense counsel was "not entitled to discuss issues outside the scope of the case at hand." *Ingram*, 427 Md. at 729. Nor was he entitled to argue that the reasonable doubt standard was something other than what the court described in its instruction. *See id.*

Moreover, defense counsel was otherwise afforded wide latitude during closing argument to discuss the reasonable doubt standard. Without interference by the trial court or the prosecutor, he noted that the reasonable doubt standard is "the highest burden that can be imposed on any attorney in any court in this state, in this nation." He told the jury that reasonable doubt means that "you have to be certain beyond all reasonable doubt," so that "innocent people do not suffer the consequences for something they didn't do." He

compared the State's burden of proof to the lower standards for preponderance of the evidence and clear and convincing evidence. He argued that proof beyond a reasonable doubt was akin to the decision to buy a house or a car, where "[y]ou want to be certain that you're getting your money's worth" and "You want to be certain. You especially want to be certain in this case that the State meets its burden beyond a reasonable doubt."

In light of the broad scope afforded defense counsel to discuss the reasonable doubt standard using examples within the approved limits of the pattern instruction, the trial court did not abuse its discretion in sustaining the State's objection to closing argument that improperly suggested a different standard of proof and invited jurors to abandon their neutral fact finding role.

**JUDGMENTS AFFIRMED. COSTS TO BE PAID BY APPELLANT.**